UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TUSHKHUMOC XELUP,

    *Plaintiff*,

v.

DEPARTMENT OF COMMERCE, et al.,

    *Defendants*.

Civil Action No. 1:24-cv-1241 (CJN)

## ORDER

Pro se plaintiff Tushkhumoc Xelup alleges that he is a "tribal and national citizen of the Maipuri Arauan Nation of the Americas" (MAN), a tribal association seemingly headquartered in the U.S. Virgin Islands. ECF No. 1 (Compl.) at 2, 5. In his capacity as "Plenipotentiary" of MAN, Xelup purports to assert various tort claims, including under the Alien Tort Statute, 28 U.S.C. § 1350, for "environmental racism, forced identity, official oppression, and denial of human rights." *Id.* at 2. Xelup names as defendants the United States, several federal agencies and their officials, two federal judges, the Virgin Islands and several of its officials, and a state court judge—all of whom Xelup alleges have "interfere[d] with and deni[ed] [his] right of Plenipotentiary authority with the citizens and members of the sovereign indigenous Maipuri Arauan nation." *Id.* at 1–2. The Court will dismiss Xelup's claims.

**I.  Claims Against Federal Defendants**

Xelup's claims against the federal defendants do not share one factual nucleus. Rather—to the extent the Court is able to interpret them—they appear to grow out of several essentially unrelated occurrences.

1

*First*, Xelup alleges that the Department of Commerce, its Secretary, and the Census Bureau were "ordered" by the Department's Inspector General in 2015 to "adjust" their internal records to "classify" Xelup's race as "colored" rather than "negro," but that neither agency complied. *Id.* at 2, 7. According to Xelup, the government's "identity fraud" has subjected him to "continued governmental oppression and discrimination, false arrest, [and] aggravated kidnapping," and has "barred [him] from traveling at U.S. airports" and "performing [his] role of Plenipotentiary." *Id.* at 7. For this alleged harm, Xelup seeks damages of a hundred million dollars and an injunction requiring the Department of Commerce and the Census Bureau to finally "adjust their records." *Id.*

*Second*, Xelup alleges that the Department of Homeland Security and its Secretary have infringed his "right to movement." *Id.* at 10. He claims that, after he assisted a fellow MAN citizen in filing a tort claim against the United States, *see Sakatu v. Virgin Islands of the United States, et al.*, Civ. A. No. 23-cv-1601, he was "held" for "more than forty-five minutes" by customs officials as he "attempted to travel to Washington, DC." *Id.* Xelup seeks reimbursement for travel expenses that he allegedly incurred as a result of that disruption, as well as injunctive relief, such as the "immediate development" of a "policy which recognizes [his] indigenous rights to movement." *Id.* at 11.

*Third*, Xelup claims that the Department of Interior and its Secretary have impermissibly "ignored" or refused to "file" communications that Xelup sent the Department concerning the "American Arawak inhabitants of the Virgin Islands territory." *Id.* at 11–12. Xelup alleges that this conduct has "perpetuat[ed] the diminished rights and freedoms of [his] indigenous rights," and he accordingly seeks the creation of a "policy recognizing [his] indigenous right as Plenipotentiary

of MAN" and an order requiring the government to "put in place immediate indigenous protections." *Id.*

*Last*, Xelup alleges that two federal judges, Judge Cheryl Krause and Judge Colin Bruce, violated his rights and engaged in "systematic acts of apartheid" by denying him leave to intervene in lawsuits pending before them that allegedly related to MAN's territory or members. *Id.* at 17–20. As a remedy, Xelup requests reimbursement of his legal fees in this lawsuit, as well as other relief that would "reflect [his] right to represent[] and provide protections for the people of MAN." *Id.* at 19–20. Xelup also seeks damages for allegedly "slanderous" statements about MAN that Judge Bruce made on the record in the prior case (namely, that MAN does not exist). *Id.* And in his complaint's general prayer for relief, Xelup further seeks against all defendants in the suit a right to use certain "ceremonial" and "vacant lands"; an order requiring defendants to develop and implement diversity policies for "indigenous inhabitants"; recognition of Xelup's right to be an "equal partner[]" in "decision-making"; and disgorgement of "benefits [that defendants] have received from their illegal purchase[], sale, and possession[] of the subject, Arawak people, with interest." *Id.* at 21–22.

To the extent that Xelup's claims against the federal government are more than "bizarre conspiracy theories" which must be dismissed for lack of jurisdiction, *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994), they also fail because they are barred by applicable immunity and justiciability doctrines. "Sovereign immunity bars suits against the United States, its agencies, and its employees sued in their official capacities, absent a waiver."[1] *Jarvis v. Kijakazi*, 2022 WL

---

[1] Although Xelup's complaint can only reasonably be construed as pertaining to federal government officials in their official capacities, *see generally* Compl., Xelup filed a "Notice of Errata" purporting to clarify that all individual defendants "are being sued in their individual and official capacit[ies]." ECF No. 14. But regardless, the federal government has submitted a Westfall Certification attesting that all individually named federal employees were acting within

3

4464985, at *2 (D.D.C. Sept. 26, 2022), *aff'd*, 2023 WL 2815967 (D.C. Cir. 2023). "Such a waiver cannot be implied but must be unequivocally expressed" in statutory text. *Id.* (quotation marks omitted). The only federal statute that Xelup mentions in his complaint is the Alien Tort Statute, Compl. at 2, but that Act is essentially jurisdictional and does not "itself . . . provide a waiver of sovereign immunity." *Industria Panificadora, S.A. v. United States*, 957 F.2d 886, 887 (D.C. Cir. 1992).

Insofar as Xelup also intends to assert common law claims for tort damages against any federal defendant, those must proceed here under the Federal Tort Claims Act (FTCA), which "provides a method for enforcing state tort law against the federal government." *Buie v. United States*, 2024 WL 519593, at *5 (D.D.C. 2024), *aff'd*, 2025 WL 502043 (D.C. Cir. 2025). But the only proper defendant in an FTCA case is the United States, not "individuals or [] particular government agencies." *Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 29 (D.D.C. 1990). And the United States may be sued under the FTCA only after the plaintiff has "first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have

---

the scope of their employment at the time of the alleged incidents. *See* ECF No. 15-2. Under the Westfall Act, that certification requires the substitution of the United States as the sole federal defendant in any damages action and establishes the Federal Tort Claims Act (FTCA) as the sole available means of seeking damages, unless the plaintiff pleads "specific facts rebutting the certification." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (citing 28 U.S.C. § 2679(d)(1)); *see also* 28 U.S.C. § 1679(b)(1). As will be discussed, Xelup has not alleged a viable FTCA claim. And although Xelup asserts that the government's Certification should not effect substitution here, he does not provide any coherent basis for that assertion. *See generally* ECF No. 19. Nor does Xelup bring any claims that would fall within an exception to the Westfall Act. *See generally* Compl.; *see also* 28 U.S.C. § 2679(b)(2). Finally, to the extent that Xelup seeks injunctive relief against any individual federal defendant in his or her personal capacity, that effort fails because the specific remedies Xelup seeks—alteration of records, the creation of new policies, and the forfeiture of federal land— "can only be provided by the government through government employees acting in their official capacities." *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007).

exhausted their administrative remedies."). Because Xelup has not pleaded any facts indicating that he complied with the FTCA's exhaustion requirement as to any tort claims he makes against the United States—the only claims here as to which sovereign immunity could conceivably be waived—those claims must be dismissed. Nor can Xelup's request for prospective injunctive relief save his claims from the sovereign immunity bar, *cf. Ex Parte Young*, 209 U.S. 123, 159–60 (1908), as he lacks standing to seek it. Xelup has not alleged that he is "immediately in danger of sustaining some direct injury as the result of the challenged official conduct" that is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (quotation marks omitted).

Finally, judicial immunity separately bars Xelup's claims against Judge Krause and Judge Bruce. Judges generally "enjoy absolute judicial immunity from suits for money damages for all actions taken in [a] judicial capacity," *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (per curiam), and denying leave to intervene (including any statements made in that process) is plainly a judicial function. *See Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam). Moreover, federal district courts "lack[] jurisdiction to review decisions of other federal courts," *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006), so Xelup also cannot obtain any non-monetary relief he seeks against the judges—which is wholly premised on his view that their prior orders were erroneous.

## II.    Claims Against Virgin Islands Defendants

Xelup also brings claims against the Virgin Islands and two individuals it employs. Xelup alleges that the Virgin Islands and its governor, Albert Bryan, "denied [him] access to conferences, meetings, and other gatherings[] where [Governor Bryan] makes policy and rules affecting the indigenous inhabitants" whom Xelup "represent[s] and protect[s]" in his role as "Plenipotentiary[]

5

for the tribes of MAN." Compl. at 15; *see id.* at 13. As relief, Xelup "seek[]s to have the Court enforce and order the establishment of diversity policies and programs for indigenous inclusiveness . . . for indigenous inhabitants in US territory." *Id.* at 14, 16. In addition, Xelup claims that a judge of the Superior Court of the Virgin Islands, Alphonso Andrews, Jr., improperly denied his request to "review" files in a criminal case against a citizen of MAN. *Id.* at 16–17. Regarding that alleged harm, Xelup "seeks reimbursement of fees related to the filing of this" lawsuit and an order "barr[ing] [Judge Andrews's] . . . actions which may operate in contradiction or opposition to the role of plenary protections provided by international law." *Id.* at 17. Xelup also seeks against all Virgin Islands defendants the remedies in his general prayer for relief, described above. *See id.* at 21–22.

To start, Xelup has not sued the Virgin Islands defendants in the correct venue. "The federal venue statute provides three bases for venue." *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 406 (D.D.C. 2017). Civil actions may be brought in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; and (3) if no other district is appropriate, "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)–(3). Xelup has not alleged that any Virgin Islands defendant resides in the District of Columbia; rather, they appear to reside in the Virgin Islands, where Xelup also alleges that he maintains his "official MAN [] office and staff." Compl. at 2. Nor has Xelup alleged that a "substantial part of the events . . . giving rise to" his claims against the Virgin Islands defendants occurred in this district, and again, they appear to have occurred in the Virgin Islands. And because venue is proper

in another district—the Virgin Islands—the final "prong of the general venue statute [is] unavailable here." *Fam*, 236 F. Supp. 2d at 407.

"Under 28 U.S.C. § 1406(a), [a] district court shall dismiss an action filed in an improper venue or, if it is in the interest of justice, transfer such case to any district in which it could have been brought." *Id.* at 408. Here, transfer is not in the interest of justice and dismissal is appropriate because Xelup's complaint also fails to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Regarding the Virgin Islands and Governor Bryan, Xelup alleges only that those defendants denied him access to "conferences, meetings, and other gatherings" where policies relevant to MAN supposedly are discussed. Compl. at 13, 15. But it is not clear what legal right that plausibly violates—not to mention which *international* law, to the extent Xelup is proceeding under the Alien Tort Statute—and Xelup points only to the nebulous concepts of "[i]nternational diversity" and "inclusion." *Id.* at 13; *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 724–25 (2004). That is insufficient.

Regarding Judge Andrews, and as has already been explained, federal district courts "generally lack[] appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts." *United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011). Yet, Xelup asks the Court to hold that Judge Andrews erred when denying Xelup's request to intervene. Compl. 16–17. The Court cannot do so.

### III. Claims Against State Defendant

Xelup last asserts claims against a judge of the Las Vegas Superior Court, Christy Craig. *Id.* at 20. Xelup alleges that Judge Craig rejected as fictious a MAN identification card proffered by a MAN citizen who was stopped in Las Vegas for failing to use a turn signal, and then, when MAN's Attorney General at Xelup's direction filed an "official notice" to the Las Vegas Superior

7

Court, that Judge Craig further "disregarded all communications and ordered the MAN citizen be locked up in a mental institution." *Id.* at 20–21. To redress those alleged actions, Xelup again seeks reimbursement of his costs and fees in this lawsuit and an order "bar[ring] [Judge Craig's] further actions related to [his] right to intervene as Plenipotentiary on behalf of Lusa Koi Yakaba, who is a citizen of MAN." *Id.* at 21. Xelup also seeks "damages for defamation as committed by [Judge Craig]," as well as the aforementioned remedies in his general prayer for relief. *Id.* at 21–22.

Although Judge Craig, unlike the other defendants in the case, has not moved for dismissal of the claims against her, a "district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is patently obvious that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (quotation marks omitted). For the reasons already discussed, that is true here. Judge Craig is absolutely immune from damages suits over actions taken in a judicial capacity, and all actions alleged in the complaint squarely fit that bill. *See Sindram v. Suda*, 986 F.2d at 1460; *Mireles*, 502 U.S. at 12. And the Court lacks jurisdiction to order injunctive relief against Judge Craig that would amount to "appellate mandamus" over her decision in a prior case, which is what Xelup seeks. *Choi*, 818 F. Supp. 2d at 85.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Federal Defendants' Motion to Dismiss, ECF No. 15, is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion to Deny the Federal Defendants' Reply in Support of the Motion to Dismiss, ECF No. 22, is **DENIED** because Plaintiff identified no basis for rejecting Defendants' timely-filed reply, ECF No. 20; and it is further

**ORDERED** that Governor Bryan and the Virgin Islands' Motion to Dismiss, ECF No. 7, is **GRANTED** and that the accompanying Motion to Quash is **DENIED AS MOOT**; and it is further

**ORDERED** that Judge Andrews's Motion to Dismiss, ECF No. 6, is **GRANTED** and that the accompanying Motion to Quash is **DENIED AS MOOT**; and it is further

**ORDERED** that Judge Andrews's Motion to Deem Conceded the Motion to Dismiss, ECF No. 10, and Motion to Strike Plaintiff's Memorandum in Opposition, ECF No. 13, are **DENIED** because the Court considered Plaintiff's Memorandum in Opposition, ECF No. 11, despite its belatedness; and it is further

**ORDERED** that Plaintiff's Motion to Deny Judge Andrews's Motions to Dismiss, to Deem Conceded, and to Strike, ECF No. 21, is **GRANTED IN PART** as to ECF Nos. 10 and 13 and **DENIED IN PART** as to ECF No. 6; and it is further

**ORDERED** that Plaintiff's Motion to Take Judicial Notice, ECF No. 29, is **DENIED** because Plaintiff states that "ECF No. 29 was not meant to be a MOTION" but "simply a . . . NOTICE," ECF No. 31; and it is further

**ORDERED** that Plaintiff's complaint, ECF No. 1, and this case are **DISMISSED WITHOUT PREJUDICE**.

This is a final and appealable Order.

The Clerk of Court is directed to close this case.

DATE: March 12, 2025

_____
CARL J. NICHOLS
United States District Judge